# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**

**VERSUS**

**KENDRICK D. ALEXANDER**

**CRIMINAL ACTION**

**NO. 14-126-JWD-EWD**

## <u>RULING AND ORDER</u>

This matter comes before the Court on the *Motion under 28 U.S.C § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docs. 166) filed by Petitioner Kendrick D. Alexander ("Petitioner," "Defendant," or "Alexander"). The United States of America ("Government" or "United States") opposes the motion. (Doc. 174.) Alexander has filed a reply (Doc. 175) and a supplemental memorandum (Doc. 181). A hearing is not necessary. (*See*, *infra*.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, Alexander's motion is denied in part and deferred in part. The motion is deferred in that Petitioner is hereby given thirty (30) days to supplement the record and submit additional evidence establishing that he was allowed to withdraw his state court *Alford* plea on a constitutional ground such as ineffective assistance of counsel. In all other respects, Petitioner's motion is denied.

## I.      Relevant Factual Background

### A.  Pre-Trial

Alexander was charged by Superseding Indictment with one count of attempting to knowingly and intentionally possess with the intent to distribute oxycodone, a Schedule II

controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. 14.)  Alexander was represented by attorneys Harry Daniels and Todd Clemons (collectively, "defense counsel").

Alexander elected to go to trial.  However, he asserts in a declaration attached to the instant motion that, when he "specifically asked [his] defense counsel about whether [the Government] had offered [him] a plea," Mr. Daniels "told [him] that the Government had not offered [him] a plea, stating that since [Alexander] only had a one count indictment there were no charges for the government to drop and no plea offer available." (Pet'r's Decl. ¶¶ 14–15, Doc. 166-2 at 21.)  Alexander declares (1) that he was "erroneously advised by defense counsel that trial was [his] only option, because [his] case only involved one Indictment" (sic); and (2) that his "[d]efense counsel never advised that [Alexander] could still plead guilty and that by doing so, [he] would have been able to get at least a 2 point 'acceptance of responsibility' reduction in [his] base sentencing category." (Pet'r's Decl. ¶¶ 16–17, Doc. 166-2 at 21.)  Alexander further claims that, "at no point did either . . .  defense counsel discuss plea options with [him]" or "advise [him] of the sentencing range for a plea as opposed to a guilty plea after trial." (Pet'r's Decl. ¶¶ 18–19, Doc. 166-2 at 21.)  According to Alexander, if the "advantages of accepting responsibility [had] been explained to [him], [he] would have [pled] guilty and [] would have received at least a 2-point reduction in [his] base offender level for sentencing purposes," which would have reduced [his] sentence by 33–38 months. (Pet'r's Dec. ¶¶ 20–21, Doc. 166-2 at 21.)

Prior to trial, the Government sought to introduce evidence of Alexander's 2001 conviction for possession with intent to distribute cocaine. (*See* Pet'r Ex. 2, *en globo*, Doc. 166-2 at 6–12.) The Government urged that this evidence was admissible under Fed. R. Evid. 404(b) and, if the entrapment defense was used, Fed. R. Evid. 405(b). (*See* Pet'r Ex. 2, Doc. 166-2 at 6–12.)  Defense

counsel did not oppose the introduction of this evidence, and it was admitted. (*See* Pet'r Ex. 2, Doc. 166-2 at 6–12.)

**B. Trial, Pre-Sentencing, and Post-Trial Motion**

A trial was held in this matter from March 9–12, 2015. (Doc. 75–79.) At the conclusion, Alexander was found guilty as charged. (Doc. 79.)

On May 29, 2015, the Presentence Investigation Report ("PSR") was filed by the Probation Office. (Doc. 85.) The PSR contained the following language under the Acceptance of Responsibility section:

> As of completion of the presentence investigation, the defendant has not clearly demonstrated acceptance of responsibility. In addition, this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt and is convicted.

(Doc. 85 at 4.) On August 17, 2015, the Probation Office released a Revised Presentence Investigation Report ("Revised PSR") that contained the same language about acceptance of responsibility. (Doc. 97 at 5.)

Additionally, on August 17, 2015, the Probation Office issued an Addendum to the PSR. (Doc. 98.) The Addendum addressed thirteen objections made by defense counsel. (Doc. 98 at 4–12.) The Probation Office agreed with two of defense counsel's objections and stated that the Revised PSR would reflect the changes resulting from these objections. (*See* Doc. 98 at 4, 7.)

On September 18, 2015, Alexander filed a motion for new trial. (Doc. 100.) Alexander argued, among other things, an alleged *Brady* violation. (Doc. 100.)

Following a hearing and additional briefing, on April 1, 2016, the Court denied Alexander's motion. The Court first found the "the allegedly suppressed evidence [wa]s cumulative" because it all "relate[d] to [the] credibility" of Hai Tran, the confidential informant who testified against Alexander. (Doc. 118 at 7–8.) The Ruling and Order also discussed the

"considerable amount of evidence at trial concerning Hai Tran's credibility," detailed the "*thirteen* separate areas in which Hai Tran was impeached," and concluded that there was "no reasonable probability that the result would have been different if the evidence had been disclosed and if the Defendant had impeached Tran with fifteen grounds rather than thirteen." (Doc. 118 at 8–10.) Second, the Court found that "Tran's testimony [wa]s strongly corroborated by other evidence, including audio recordings that confirm the Defendant's predisposition for the crime." (Doc. 118 at 7–8.) This Court specifically detailed the audio recordings between Tran and Alexander. (Doc. 118 at 10–11.) The Court later explained:

> Defendant argues that there was insufficient evidence to show that he was predisposed to selling narcotics prior to meeting Hai Tran. Defendant claims that the only evidence showing predisposition was a 2001 drug conviction resulting from a 1999 arrest. . . . The Court rejects this argument. As shown above, there is ample evidence, including the recording of the August 5, 2014, conversation, to supporting a finding of predisposition and to reject the defense of entrapment.

(Doc. 118 at 16.)

Alexander's sentencing was set for May 13, 2016. (Doc. 121.) Prior to that, defense counsel submitted a sentencing memorandum with a supplement. (Docs. 124, 126.) Defense counsel argued, among other things, that certain enhancements were not appropriate, that an upward departure was not warranted, and that a downward variance should be imposed because of Alexander's gambling problem. (*See* Doc. 124.)

Additionally, on May 13, 2016, the Probation Office filed a Supplemental Addendum reflecting that a certain prior case involving Alexander had to be moved to the "Adult Criminal Conviction(s)" section of the PSR, as he entered an *Alford* plea to simple robbery. (Doc. 128.) The Supplemental Addendum went on to state that, as a result of this *Alford* plea, Alexander's criminal history category changed from II to III, and his guideline range went from 108 to 135 months imprisonment to 121 to 151 months. (*See* Doc 97 at 16; Doc. 128 at 2.)

The sentencing hearing was later moved to June 24, 2016. (Doc. 129.) However, the United States moved (with Alexander's agreement) to reset the hearing for June 21, 2016. (Doc. 130.) The order was granted. (Doc. 131.)

On June 16, 2016, Alexander submitted a letter to the Court related to an *Alford* plea he entered in state court. (Doc. 134-1.) The letter stated:

> Dear Honorable Judge John deGravelles:
>
> I'm writing you in regards to the state conviction that I pled to after my federal conviction in April of 2015. I took an Alford plea in the state case that had been pending since 2007. The state decided to drop the charges and I was to plea[d] guilty to 2 years on simple robbery with no weapon running concurrent with whatever my federal sentence would be. They also agreed to give credit for the time I am serving now as I await federal sentencing, pretty much a no brainer as I was done with the time. As you can see with the transcript attached, my concern was whether this would affect my federal sentencing. I was told that if the sentencing was delayed until after my federal sentencing, it would not affect my case. And now that is not the case so clearly I was misled. I was offered a plea deal of one year in 2013 with credit for the previous 5 months served awaiting bond. (See email from the ADA previously attached as an exhibit in the bond hearing). I've maintained my innocence on that charge for nine years and was also ready and willing to go to trial on that case. I have now filed a motion to withdraw the guilty plea and the matter is set for October 13, 2016. I am represented by Julie Tizzard for that matter. I was represented by Harry Daniels, III at the plea in 2015 and was constantly told that it would not affect me if I pled guilty and delay sentencing until after my federal sentencing. I ask that the court do not penalize me for that conviction but I do not want to reset my federal sentencing again and wait for the state matter to be resolved. I just want your honor to know the truth of that matter because AUSA Cam Le will bring that up to paint a picture of me as a bad person. My plan was to ask for a continuance when this first came about, but there is no way I can stay here another four months due to the living conditions. Thanks for your time.
>
> Kendrick Alexander

(Doc. 134-1 at 1.)

### C. Sentencing

Alexander's sentencing was held on June 21, 2016. (Doc. 135.) At the beginning of the hearing, the Court specifically asked Alexander if he wanted to delay the sentencing in light of his

trying to withdraw the *Alford* plea in state court, and he specifically stated on the record that he did not want to delay the hearing. (Sentencing Tr. 3–4, Doc. 148.) The Court had the following colloquy:

| | |
|---|---|
| Court: | So despite the fact you've hired an attorney to withdraw the *Alford* plea, and the *Alford* plea may have an impact on your sentencing, you, nonetheless, do not want to continue this until the Court has ruled on that? |
| Alexander: | Yes, Sir. I – I tried to get it done before the 21st, today, and they didn't have a date open and. . . |
| Mr. Clemons: | But you do want to proceed today? |
| Alexander: | I do want to proceed today, yeah. |
| The Court: | Okay. Well that's the main thing I just wanted to get cleared up on the record. |

(Sentencing Tr. 4, Doc. 148.) Additionally, Alexander also stated on the record that he had reviewed the Revised PSR and Addenda (which included the information about the higher criminal history category from the *Alford* plea), that he understood them, that he discussed them with his attorney, that Mr. Clemons answered any questions he had, and that he was "satisfied with the representation by Mr. Clemons[.]" (Sentencing Tr., Doc. 148 at 5–6.)

Following the Court's ruling on Alexander's thirteen objections, Mr. Clemons argued that Alexander was an honorable man that had been out of the drug game for a long time but that had made a mistake. (Sentencing Tr. 148, Doc. 148.) Defense counsel also stated that Alexander "still maintains he was entrapped, but he never denied that he did what the Government was accusing him of doing and, Judge, that was before I got any discovery." (Sentencing Tr. 148, Doc. 148.) Defense counsel also said:

He's already lost acceptance of responsibility, we had that conversation. He knew that when he went to trial that – it didn't go his way. We went through the

guidelines. He knew, okay, well, I'm going to lose those points. Of course we
fought for them, but he understood that if I take this to trial I'm going to lose that.

(Sentencing Tr. 150, Doc. 148.) Alexander never corrected this statement in open court before

sentencing was pronounced. Defense counsel also asked that Alexander not be punished for going

to trial and urged a sentence at the low-end of the guideline range. (Sentencing Tr. 149–150, Doc.

148.) Alexander was sentenced to just that: 121 months, the very bottom of his guideline range.

(Doc. 137.)

### D. Appeal

On June 28, 2016, Alexander filed a notice of appeal (Doc. 139). On April 6, 2017, the

Fifth Circuit issued a mandate affirming the conviction and sentence. (Doc. 161.)

The appellate court began its discussion by rejecting Alexander's argument that there was

insufficient evidence to show that he was entrapped. The Fifth Circuit found sufficient evidence

to support the jury finding both that "Alexander was not induced [and] that he was predisposed,"

even though only one of these would defeat his argument. (Doc. 161 at 8.) The Court based this

on Alexander's " 'active, enthusiastic participation' after being approached by Tran," including

his negotiating a low purchase price; his agreement to purchase 5,000 tablets per week; his making

arrangements with dealers to sell the tablets; his asking Tran about buying cocaine, marijuana, and

codeine; Alexander's being motivated by profit (as evidenced by his negotiation of "a low price

for a bulk order of the tablets"); and his "knowledge of drug trafficking by contacting partners and

dealers to distribute the tablets and using slang terms for controlled substances in recorded

conversations." (Doc. 161 at 8–9.) Further, the jury was entitled to believe Tran that Alexander

initiated the criminal activity, and, in any event, this is only "one factor in the analysis." (Doc. 161

at 9.) Alexander complained about the jury improperly considering his 2001 conviction. The Fifth

Circuit responded that, while this alone would have been insufficient, this too was only one factor,

and "the government presented the additional evidence of predisposition discussed above." (Doc. 161 at 9–10.)

Additionally, the appellate court found that the government's conduct "did not rise to the level of inducement, or creative activity of law enforcement officials in spurring an individual to crime." (Doc. 161 at 10 (citation and quotations omitted).) The Fifth Circuit stated, "There was more than sufficient evidence for the government to disprove inducement. If the jury believed Tran's testimony, which it was entitled to do, then Alexander independently initiated the drug deal and the government did no more than 'provid[e] an opportunity or facilities to commit the offense.' " (Doc. 161 at 10–11 (citation omitted).) Even if the jury believed Alexander that "Tran offered him the opportunity to buy drugs on up to five occasions before he finally accepted the invitation," they still would have been entitled to conclude that "the government's involvement did not rise to the level of inducement," based on prior Fifth Circuit case law. (Doc. 161 at 11.) Ultimately, the "jury's finding that Alexander was not entrapped was well within its discretion." (Doc. 161 at 12.)

Alexander next complained that this Court instructed the jury that, " 'in determining whether the Defendant lacked predisposition to commit this crime and was induced to commit the crime, you may consider the Defendant's prior conviction for possession with intent to distribute a controlled substance in 2001.' " (Doc. 161 at 12.) The appellate court rejected his argument on two grounds. First, again, prior convictions are "a factor that tend to prove disposition." (Doc. 161 at 12.) Second, the error was harmless because:

> The evidence was overwhelming that Alexander was predisposed and not induced to commit the crime. Recordings indicate that Alexander asked Tran about oxycodone, not the reverse, and show that Alexander was an active and enthusiastic participant, motivated by profit, with ready connections to drug dealers, and familiar with and interested in purchasing a number of illegal substances. They show no resistance on Alexander's part and no threats, coercion, or appeals to sympathy on Tran's part. Considering the entire record, we are convinced the instruction did not affect the outcome of the case.

(Doc. 161 at 12–13.)

The Fifth Circuit next addressed the government's alleged *Giglio* violations. The appellate court "agree[d] with the district court, however, that for two reasons the nondisclosures were not material": (1) the "evidence was cumulative," as reflected by how this Court "chronicled thirteen instances in which Tran's credibility was impeached at trial," and (2) "Tran's testimony was not the only evidence at odds with entrapment," as "the recordings introduced at trial are strong evidence of predisposition; they show that, from August 5, 2014, onward, Alexander was active, enthusiastic, and knowledgeable participant in the crime." (Doc. 161 at 13–15.) While Tran's word was the only evidence disputing what Alexander said happened before August,

> there is no reasonable probability the jury would not have found Alexander predisposed to commit the crime even if it credited his testimony about inducement. Given the quantity and quality of reasons the jury had not to take Tran at his word even without the undisclosed evidence, and the strength of other evidence of Alexander's predisposition, the undisclosed evidence does not cast sufficient doubt on the verdict to merit a new trial.

(Doc. 161 at 15.)

The Fifth Circuit also rejected Alexander's complaints about sentencing. Relevant here, the appellate court said: "We have previously rejected Alexander's position that a defendant who admits engaging in the alleged conduct, but argues entrapment, has accepted responsibility. Because an entrapment defense denies the *mens rea* element, it is the 'denial of factual guilt' that makes a defendant ineligible for an acceptance-of-responsibility reduction." (Doc. 161 at 16 (citation omitted).) The Court went on to overrule the other objections to his sentence.

### E. The Instant § 2255 Motion

On March 26, 2018, Alexander filed the instant motion under 28 U.S.C. § 2255. (Doc. 166.) The details of that motion will be discussed below. On April 6, 2018, the United States filed

its opposition. (Doc. 174.) Petitioner submitted a reply memorandum on April 19, 2018. (Doc. 175.) Alexander later submitted a supplemental memorandum on October 17, 2018. (Doc. 181.) On March 14, 2019, Petitioner filed a motion for a status conference (Doc. 182), which this Court granted on October 2, 2019.[1] At the October 7, 2019, status conference, the Court informed the parties that, within two weeks, the Court would either grant the request for a hearing or issue a ruling. The Court has chosen the latter option.

## II. Discussion

### A. Summary of Issues and Rulings

Petitioner argues that his Fifth and Sixth Amendment rights were violated. He claims that "[r]elief is warranted on several grounds, including ineffective assistance of counsel, due process violations, and withdrawal of state conviction." (Doc. 166-1 at 2.) Alexander complains about the following specific actions taken by defense counsel:

(1) their failure to object to the introduction of his 2001 conviction;

(2) their failure to conduct an adequate pretrial investigation that could have led to more ways of impeaching Hai Tran;

(3) their alleged failure to engage in plea negotiations or discuss plea options, which resulted in Alexander not getting acceptance of responsibility points at sentencing;

(4) their failure to adequately present the entrapment defense and to preserve certain defenses for Alexander's motion for acquittal;

---

[1] Defendant filed a writ of mandamus to the Fifth Circuit in an effort to expedite the Court's ruling on the instant motion. The Court wishes to note that it has no ill will toward Defendant either for his objection to the delay or for filing the writ. The Court understands Defendant's frustration. The Court attributes any delay to the crisis in the Middle District of Louisiana after Senior Judge James J. Brady's death and the influx of Great Flood of 2016 cases. *See Baton Rouge federal court's chief judge: 'We need to address our workload somehow,'* THE ADVOCATE, July 14, 2019, https://www.theadvocate.com/baton_rouge/news/courts/article_d48846a2-9129-11e9-8e38-7b2dccfd5f90.html; Lauren R. Hadden, *Motion for Relief: As Workload Rises, Authorized Judgeships in the Middle District Remain Flat*, THE BATON ROUGE LAWYER, Jan.–Feb. 2019, at 14–16, available at https://brba.org/images/aroundthebar/2019Jan_Febissue.pdf .

(5) defense counsel's errors during sentencing, including failing to discuss the § 3553(a) factors and failing to make an argument about the market rate of oxycodone;

(6) appellate counsel's various errors, including the failure to raise an argument about the 2001 conviction, requiring Alexander to obtain a second lawyer to file a reply brief, and appellate counsel's inadequate briefing and oral argument; and

(7) one defense counsel's error in advising Alexander to take an *Alford* plea in state court, which resulted in him having a higher criminal history category and guideline range.

(*See* Doc. 166-1.) Alexander also urges that his withdrawing of the *Alford* plea entitles him to a new sentencing.

In sum, having carefully considered the law, the facts in the record, and the arguments and submissions of the parties, the Court will deny Petitioner's motion in part and defer it in part. Specifically, the § 2255 motion is denied in all respects except on the issue involving the *Alford* plea.

First, even assuming defense counsel was objectively unreasonable in failing to oppose the introduction of the 2001 conviction (which is questionable), both this Court and the Fifth Circuit have recognized the "ample" and "overwhelming" evidence of predisposition in this case. Thus, Petitioner cannot establish prejudice, which is the second requirement for an ineffective assistance of counsel claim.

Second, the same result is warranted for the alleged inadequate pretrial investigation claim. Hai Tran was impeached on thirteen different grounds, and the Court does not believe that the new evidence (even if it could have or should have been obtained) would have made a difference to the outcome of the trial or resulted in an unfair proceeding. Phrased another way, Petitioner cannot demonstrate prejudice for this additional impeachment material.

Third, Alexander's argument that defense counsel failed to properly advise him of his options to plead before trial fails both prongs of the *Strickland* test. First, the record contradicts Petitioner's conclusory allegations that his attorneys did not advise him of the consequences of pleading guilty and his loss of acceptance of responsibility points. Second, Alexander cannot show prejudice because, throughout all of these proceedings and even with the filing of the instant motion, Alexander still maintains that he was entrapped. Thus, even with objectively unreasonable counsel, Alexander cannot receive credit for acceptance of responsibility because he still, to this day, maintains that he is not guilty.

Fourth, with respect to the entrapment defense and motion for acquittal, the Court finds that Petitioner cannot establish prejudice. Again, as the Fifth Circuit stated, the evidence against Alexander was "overwhelming," so there's no reasonable likelihood that the outcome of the proceeding would be different or that the proceeding was fundamentally unfair.

Fifth, Petitioner has failed to demonstrate the first prong of *Strickland* as to any alleged errors during sentencing. The Court finds that defense counsel zealously and adequately represented Alexander before and during the sentencing hearing and did not fall below the objective standard of reasonableness.

Sixth, Alexander has failed both parts of the *Strickland* test for any alleged deficiencies on appeal. Again, the evidence of guilt was overwhelming, and Petitioner's complaints are conclusory and lack the requisite specificity.

Seventh, however, while a close call, the Court will defer ruling on the issue of whether Alexander is entitled to be resentenced because he withdrew his state court *Alford* plea. There is insufficient evidence in the record to establish that his withdrawing from the nolo plea was because of ineffective assistance of counsel or some other constitutional ground, as is required. The Court

will grant Alexander thirty (30) days to supplement the record to establish this fact. If he does so, the Court will vacate his sentence. If he fails to do so, the Court will deny the motion on this issue.

### B. Ineffective Assistance of Counsel

#### 1. Legal Standard

"[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (citing *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)). "To obtain relief on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's conduct was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) this deficient performance prejudiced his defense." *Bass*, 310 F.3d at 325 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

The first prong—deficient performance—"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064 (citations omitted). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. As the Supreme Court said in *Strickland*:

> From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to

bear such skill and knowledge as will render the trial a reliable adversarial testing process.[2]

*Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.  The Supreme Court also strongly empathized the deference that must be given to counsel:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689–90, 104 S. Ct. at 2065–66 (citations and quotations omitted). In sum:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that

---

[2] *Strickland* went on to say:

> These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. . . . Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.

*Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Regarding the second prong, "[i]t is insufficient for a defendant merely to prove that counsel's conduct was deficient; a defendant must have also been prejudiced by this ineffective legal assistance." *Bass*, 310 F.3d at 325. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067 (citation omitted). "To prove prejudice, the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bass*, 310 F.3d at 325 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The Supreme Court explained:

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068–69. Further:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a

pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069.

"Such a claim fails unless the defendant establishes both deficient performance and prejudice." *Bass*, 310 F.3d at 325. That is to say, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [the Supreme Court] expect[ed] will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

The Court must "prompt[ly]" grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *See Hall v. United States*, 407 F.2d 1320, 1321 (5th Cir. 1969) (citations omitted)). As the Fifth Circuit has explained:

"A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992)

(per curiam). Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. *United States v. Auten,* 632 F.2d 478, 480 (5th Cir. 1980).

A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents "independent indicia of the likely merit of [his] allegations." *See United States v. Cavitt,* 550 F.3d 430, 442 (5th Cir. 2008). However, this requirement must be understood practically, in the context of the claim being presented. For example, when a defendant's allegations contradict his sworn testimony given at a plea hearing, we have required more than "mere contradiction of his statements," typically "specific factual allegations supported by the affidavit of a reliable third person." *United States v. Raetzsch,* 781 F.2d 1149, 1151 (5th Cir. 1986); *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985). Similarly, speculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing. *See, e.g., United States v. Auten,* 632 F.2d 478, 480 (5th Cir. 1980) ("Auten does not point to any evidence, nor do we find any in the record, to support his allegation that the government knowingly used perjured testimony.... Auten's conclusory assertions do not support the request for an evidentiary hearing."); *United States v. Edwards,* 442 F.3d 258, 265 (5th Cir. 2006) ("Our review of the record reveals no factual support for this improbable scenario [involving alleged government *Brady* violations]; instead, the record affirmatively contradicts Appellants' arguments.").

*United States v. Reed*, 719 F.3d 369, 373–74 (5th Cir. 2013).

## 2. 2001 Conviction

### a. Parties' Arguments

First, Petitioner contends that he was denied effective assistance of counsel by his attorneys' failure to object to his 2001 conviction. Defense counsel conceded the admissibility of the conviction at a hearing, and he failed to file a memorandum opposing it. This was not a strategic choice, according to Alexander, but rather an error. If an objection had been made, the Court would have refused to admit the conviction as unduly prejudicial. Alexander argues that the Government had other evidence to prove motive, intent, or opportunity. Further, the 2001 conviction would have failed the *Beechum* test because there was an insufficient linkage between that conviction and the instant offense. As a result of this deficient performance, the government was able to introduce this evidence to show propensity and predisposition for the crime. Further,

defense counsel failed to make an argument based on Fed. R. Evid. 609(b), which limits convictions over ten years except in rare circumstances. Petitioner says that this was highly prejudicial, though he provides little elaboration.

The Government responds that Alexander cannot prove prejudice for this or any of the other pretrial or trial errors he alleges. The Government quotes the rulings of this Court and the Fifth Circuit concerning the "ample" and "overwhelming" evidence of predisposition in this case. (Doc. 174 at 8 (citing Ruling and Order on Defendant's Motion for New Trial, Doc. 118 at 16, and Fifth Circuit opinion, Doc. 161).) The Government argues that Petitioner has not pointed to "any evidence that would exonerate him or rebut the substantial evidence of his guilt presented to the jury." (Doc. 174 at 8.) Thus, even if there were errors falling below the objective standard of reasonableness, Alexander could not prevail. As to the 2001 conviction, the Government urges that the evidence was admissible because Alexander made his character an issue by pleading entrapment. (Doc. 174 at 10.)

### b. Analysis

The Court denies Alexander's motion on this issue. In short, Petitioner has failed to prove the requisite prejudice.

As pointed out by the Government, this Court already found in its ruling on Alexander's motion for new trial:

> Defendant argues that there was insufficient evidence to show that he was predisposed to selling narcotics prior to meeting Hai Tran. Defendant claims that the only evidence showing predisposition was a 2001 drug conviction resulting from a 1999 arrest. . . . The Court rejects this argument. As shown above, there is ample evidence, including the recording of the August 5, 2014, conversation, to supporting a finding of predisposition and to reject the defense of entrapment.

(Doc. 118 at 16.)

Similarly, as detailed extensively above, the Fifth Circuit found sufficient evidence to support the jury finding both that "Alexander was not induced [and] that he was predisposed," either of which would have defeated the entrapment defense. (Doc. 161 at 8; *see id.* 8–13.)  The Fifth Circuit summarized its findings as follows:

> The evidence was overwhelming that Alexander was predisposed and not induced to commit the crime. Recordings indicate that Alexander asked Tran about oxycodone, not the reverse, and show that Alexander was an active and enthusiastic participant, motivated by profit, with ready connections to drug dealers, and familiar with and interested in purchasing a number of illegal substances. They show no resistance on Alexander's part and no threats, coercion, or appeals to sympathy on Tran's part.

(Doc. 161 at 12–13.)

Again, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068–69.  Further:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069.  Given the "overwhelming" record evidence against Alexander, the Court finds that, even if his defense counsel made errors in not opposing the 2001 conviction, there is not " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bass*, 310 F.3d at 325 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).  Phrased another way, there is not a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  Accordingly, this part of the motion is denied.

### 3. Pre-Trial Investigation

#### a. Parties' Arguments

Petitioner next complains that defense counsel failed to "conduct an independent investigation of [his] case." (Doc. 166-1 at 11.)  Alexander claims that defense counsel relied only on the discovery provided by the Government, and they "failed to obtain the CI and his wife's criminal record from Ascension Parish, Louisiana." (Doc. 166-1 at 11.)  Alexander argues this could have been used to impeach the CI (Hai Tran) at trial.  "But for defense counsels' deficient representation, Alexander would have been able to demonstrate conclusively that he had been entrapped by the CI, a long-term Government informant who had benefitted greatly from his cooperation with the Government; and, who was now working to get the sentences of family members reduced." (Doc. 166-1 at 11.)  Additionally, defense counsel also failed to obtain "video and transaction records from the L'Auberge Casino for the Government CI," which would have purportedly "shown that the CI had lied about the frequency and substance of his meetings and relationship with Alexander, prior to August 6, 2014." (Doc. 166-1 at 12.)  This evidence could have shown more inconsistencies with Hai Tran's testimony.  Further, defense counsel failed to "investigate the devices used by the CI to make phone calls to Alexander," which would have demonstrated that there were "many more calls and texts between the CI and Alexander than were introduced by the Government at trial" and would have shown that the CI himself initiated the contact, not Alexander.  All of this hurt Petitioner's use of the entrapment defense.

Moreover, defense counsel failed to request *Jencks* material after Agent Abney gave "very evasive testimony for the Government," which "would have shown all contact between the CI and Alexander and would have provided additional impeachment information to support Alexander's entrapment defense." (Doc. 166-1 at 12.)  According to Alexander, defense counsel relied solely

on what was provided by the Government and failed to conduct any investigatory work of their own. "This case came down to credibility. Defense counsel had no independent information to back up Alexander's version of events crucial to establishing a prima facia case of entrapment and never tried to secure it." (Doc. 166-1 at 13.)

The Government first argues a lack of prejudice, which was detailed in the preceding section and which cuts across all of these claims. The Government next claims that Alexander's arguments about pretrial investigation are "only conclusory allegations that such additional pretrial investigation would have bolstered his claim of entrapment." (Doc. 174 at 11.) Defendant has failed to show how his attorneys' actions were unreasonable or prejudicial. Further, "[d]efense counsel's successful pursuit of impeachment evidence and pretrial pleadings reflects their strategic acumen and zealous advocacy." (Doc. 174 at 11.) The Government notes defense counsel's obtaining of certified state court records that ultimately resulted in this Court reversing a prior ruling about additional impeachment material. Further, Mr. Clemons introduced an affidavit submitted to a magistrate judge in 2008 in California which was not provided by the Government before trial. In sum:

> Through their independent investigation and thorough preparation, defense counsel presented the jury with thirteen separate areas in which the cooperator was impeached. See Rec. Doc. 118, at 8-10. Three years after his conviction, Alexander still believes that his trial attorneys should have done more to impeach the cooperating witnesses. However, the jury was well aware of significant and extensive impeachment evidence regarding the cooperating witness – the jurors simply did not believe Alexander's version of events. Therefore, Alexander failed to show that his attorneys were unconstitutionally deficient.

(Doc. 174 at 12.)

### b. Analysis

The Court will deny Alexander's motion on this issue. Even assuming that defense counsel was objectively unreasonable in failing to take the actions that Alexander believes should have

been taken (which is questionable), by Petitioner's own admission, all of this evidence would have merely been used to impeach Hai Tran's testimony. But, as this Court explained, there was a "considerable amount of evidence at trial concerning Hai Tran's credibility"—indeed, there were "*thirteen* separate areas in which Hai Tran was impeached,"—and there was "no reasonable probability that the result would have been different if the evidence had been disclosed and if the Defendant had impeached Tran with fifteen grounds rather than thirteen." (Doc. 118 at 8–10.) Further, as the Fifth Circuit stated, any such additional material would be immaterial and cumulative based on how this Court "chronicled thirteen instances in which Tran's credibility was impeached at trial," and "the recordings introduced at trial are strong evidence of predisposition; they show that, from August 5, 2014, onward, Alexander was active, enthusiastic, and knowledgeable participant in the crime." (Doc. 161 at 13–15.)

Again, the Court is entitled to consider the amount of record evidence against Alexander, which, here, was considerable. *See Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069. Given all of the above evidence on Hai Tran's credibility, the Court finds that Alexander has failed to "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bass*, 310 F.3d at 325 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052). Accordingly, there is no prejudice, and Petitioner's motion on this issue is denied.

### 4. Plea Negotiations and Acceptance of Responsibility

#### a. Parties' Arguments

Petitioner next complains that the "likely consequences of going to trial as opposed to pleading guilty was never discussed." (Doc. 166-1 at 13.) Defense counsel erroneously advised Alexander that he could not obtain a plea because he was only indicted on one count, that he was

never advised of the sentencing range, and that he "was never advised that he could plead guilty to the one count indictment and that by doing so, he would have at least a 2-point reduction in his offense level for 'acceptance of responsibility.' " (Doc. 166-1 at 14.)  Defense counsel never advised Alexander of acceptance of responsibility, so he believed his only choice was to go to trial. All of this resulted in an additional 33 months in prison.  According to Petitioner, any additional jail time he faces constitutes prejudice.

The Government responds that Alexander presents no evidence that it extended or would have extended a formal plea offer to Petitioner.  Without a plea offer, there is no prejudice.  "Absent a plea offer, Alexander's claim boils down to the contention that his lawyers should have done more to convince him to plead guilty prior to trial." (Doc. 174 at 6.)   Alexander still asserts that he was entrapped, but he claims that he would be entitled to a 2-point credit for acceptance of responsibility.  But this credit is not automatic, and the guidelines provide that Alexander is not entitled to it when he asserts the entrapment defense. (Doc. 174 at 6–7.)   In sum:

> Even if his self-serving and conclusory allegations were taken as true for the purpose of argument, it is impossible for Alexander, who still insists that he was entrapped and who has a documented history of lying to this Court and the U.S. Probation officer about his assets, to demonstrate that he would have been better off pleading guilty than by proceeding to trial. Accordingly, Alexander has failed to demonstrate any ineffectiveness on the part of counsel and has failed to demonstrate any prejudice with regard to his decision not to plead guilty.

(Doc. 174 at 7.)

Alexander responds that, even if the Government did not extend a formal plea offer, defense counsel still failed to advise him of the "pros and cons of pleading guilty as opposed to going to trial," and this constituted an ineffective assistance of counsel.  (Doc. 175 at 2.) Petitioner claims that his attorneys completely failed to advise him of the consequences of going to trial, so he was "denied the ability to make an intelligent choice by the ineffective assistance of counsel."

(Doc. 175 at 3.) Defense counsel should have "advised him of the likely consequences of pleading guilty as constitutionally mandated by *Strickland*." (Doc. 175 at 3.) Here, Alexander was never advised that he would lose his 2-point reduction for acceptance of responsibility, and this was an option of which he was deprived. Had Alexander had this option, he would have taken it, not gone to trial, and not asserted the entrapment defense.

### b. Legal Standard

The Fifth Circuit has articulated the standard to be applied with respect to ineffective assistance of counsel and plea negotiations:

> The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is one of the most precious applications of the Sixth Amendment. When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance.

> The Supreme Court recently affirmed this Circuit's case law, holding that the Sixth Amendment protects against, and remedies, the rejection of favorable plea offers for want of effective assistance of counsel.

> An attorney renders constitutionally ineffective assistance where his performance was deficient and prejudiced the defense. To establish an ineffective assistance claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different. For the deficiency prong, counsel's performance is to be accorded a heavy measure of deference. To meet the prejudice prong, [petitioners] must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Any amount of additional jail time is significant for purposes of showing prejudice.

*United States v. Rivas-Lopez*, 678 F.3d 353, 356–57 (5th Cir. 2012) (citations, quotations, and alterations omitted).

### c. Analysis

The central issue here is whether Alexander has demonstrated that he was denied the right to effective assistance of counsel when defense counsel allegedly failed to advise him that he would be entitled to a 2-point reduction for acceptance of responsibility for pleading guilty. In short, the Court finds that Alexander's claim fails under both prongs of *Strickland*.

First, the Court finds that defense counsel did not act with objective unreasonableness. The statements in Alexander's declaration are contradicted by the record and thus can be rejected without the need for a hearing. *See Hall*, 407 F.2d at 1321 ("The appellant also contends that the sentencing court failed to comply with the provisions of Rule 11, F.R.Crim.P., before accepting his guilty plea. The district court held that the transcript refutes this contention. We agree. Therefore there was no need to hold an evidentiary hearing on the merits of the § 2255 motion. (citations omitted)); *cf. Reed*, 719 F.3d at 373–74 (5th Cir. 2013) (finding, where petitioner claimed his attorney represented that he would receive a fixed sentence of thirty-six months if he accepted a plea deal and where he ended up getting forty-eight months by not, that the district court erred in not granting a hearing because his allegations were "*not speculative or conclusory*," his affidavit "constitute[d] competent evidence sufficient, if believed, to establish that counsel" acted improperly," and his *"allegations [were not] contradict[ed] [by] any evidence in the record"* (emphasis added)).

Specifically, defense counsel stated at the sentencing hearing:

He's already lost acceptance of responsibility, we had that conversation. He knew that when he went to trial that – it didn't go his way. We went through the guidelines. He knew, okay, well, I'm going to lose those points. Of course we fought for them, but he understood that if I take this to trial I'm going to lose that.

25

(Sentencing Tr. 150, Doc. 148.)  Critically, Alexander never corrected this statement in open court before the Court pronounced a sentence.  The Court heard Mr. Clemons's argument and observed Petitioner, and there was no indication given by him that Mr. Clemons misrepresented this statement.  Further, Mr. Clemons conducted himself with considerable skill and professionalism throughout the proceedings, so the Court finds his representation during sentencing to be highly credible.

Moreover, Alexander also stated on the record at the beginning of the sentencing hearing that he had reviewed the Revised PSR, that he understood it, that he discussed it with his attorney, and that Mr. Clemons answered any questions he had. (Sentencing Tr., Doc. 148 at 5–6.)  Petitioner did this despite the fact that the Revised PSR stated:

> As of completion of the presentence investigation, the defendant has not clearly demonstrated acceptance of responsibility. In addition, this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt and is convicted.

(Doc. 97 at 5.)  Yet, despite this statement in the Revised PSR, Alexander still stated in open Court at the sentencing hearing that he was "satisfied with the representation by Mr. Clemons[.]" (Sentencing Tr., Doc. 148 at 5–6.)

Given all this evidence, and given the fact that defense counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, the Court finds Alexander's testimony that defense counsel did not advise him of the consequences of pleading guilty to be unsupported, conclusory, and contradicted by the record.  These declarations fail to establish that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.

Ct. at 2064. That is to say, the Court finds that Mr. Clemons conduct did not fall "below an objective standard of reasonableness." *Bass*, 310 F.3d at 325 (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052).

Nevertheless, even assuming that defense counsel had made such errors, Petitioner has failed to establish any prejudice. Again, as the Fifth Circuit has stated, "We have previously rejected Alexander's position that a defendant who admits engaging in the alleged conduct, but argues entrapment, has accepted responsibility. Because an entrapment defense denies the *mens rea* element, it is the 'denial of factual guilt' that makes a defendant ineligible for an acceptance-of-responsibility reduction." (Doc. 161 at 16 (citing *United States v. Brace*, 145 F.3d 247, 265 (5th Cir. 1998).)

Alexander has argued entrapment at every stage of these proceedings. He did so at trial. Defense counsel did so at sentencing. (*See* Sentencing Tr. 148, Doc. 148 ("He still maintains he was entrapped, but he never denied that he did what the Government was accusing him of doing and, Judge, that was before I got any discovery.").) And Alexander even did so in his § 2255 declaration. (*See* Pet'r's Decl. ¶¶ 6–10, particularly ¶ 8 ("I also asked my defense counsel to subpoena the CI's phone records and explained that they would show that the CI had, in fact, courted me to engage in criminal activity and not the other way around as contended by the Government."), Doc 166-2 at 20.)

Thus, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bass*, 310 F.3d at 325 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052). Again:

> To meet the prejudice prong, [petitioners] must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening

circumstances), *that the court would have accepted its terms*, and *that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.*

*See Rivas-Lopez*, 678 F.3d 353, 356–57 (emphasis added, quotations and citations omitted). Here, there is no reasonable probability that the Court would have accepted the guilty plea when Alexander still maintains that he was entrapped (or when he would have had to lie during his Fed. R. Crim. P. 11 colloquy). And, there is a high likelihood that Alexander would still have argued at sentencing that he was entrapped (or a variation of this)—as he has done at every stage of these proceedings—and thus lost any acceptance of responsibility to which he otherwise could have been entitled. (*See* Fifth Circuit's Mandate, Doc. 161 at 16 (citing *Brace*, 145 F.3d at 265).)

In sum, Petitioner's argument appears to be less about ensuring he had adequate representation and a fair trial and more about playing games of chance with the criminal justice system. For all the above reasons, the Court rejects Alexander's arguments about the acceptance of responsibility points and denies his motion on this issue.

### 5. "Failure to Present a Constitutionally Adequate Defense" and Failure to Preserve Defenses Regarding Motion for Judgment of Acquittal

#### a. Parties' Arguments

Petitioner next complains about defense counsel's failure to properly argue that he was entrapped. According to Alexander, defense counsel instead focused almost entirely on impeaching Hai Tran. Further, defense counsel failed to explain entrapment adequately in closing argument and instead relied on the Court's instruction of the entrapment defense. Petitioner further argues that defense counsel failed to properly argue his motion for judgment of acquittal or note his objection to the Court's denial of same. This resulted in the Fifth Circuit reviewing for clear error and not abuse of discretion.

The Government responds by stating that Alexander does not state what, specifically, his attorneys should have done with respect to the entrapment defense that they did not do. Rather:

> The record establishes that defense counsel's strategy of pursing an entrapment defense, which included calling Alexander to testify, was adequately informed and bore a reasonable relationship to a plausible defense strategy. Counsel knew the legal standards for obtaining the entrapment instruction, elicited testimony and made arguments in light of those standards, cited Fifth Circuit case law in support of the instruction, and referred to testimony in the record to support Alexander's claim of government inducement.

(Doc. 174 at 12.) The Government also says that it was proper for the Court to instruct the jury on the entrapment defense and that "Clemons gave a strong summation that reflected his familiarity with the evidence and that clearly focused on the entrapment defense – emphasizing the significant impeachment evidence against the cooperator, and directing the jury's attention on the Government's burden of proof." (Doc. 174 at 12–13.) The Government again relies on the Fifth Circuit opinion which found an adequate factual basis for the jury's findings. As to the acquittal issue, the Government shows that plain error is the proper standard of review, and, in any event, "Alexander cites no law or facts to establish that counsel's strategic decision in this regard was objectively unreasonable or that he was prejudiced." (Doc. 174 at 13–14.) Regardless of the standard, there was "no reasonable likelihood that the ultimate outcome would have been different either at trial or on appeal." (Doc. 174 at 14.)

### b. Analysis

The Court will deny the motion on these issues. With respect to the entrapment defense, the Court agrees with the Government that defense counsel diligently and thoroughly pursued the entrapment defense throughout the trial, including during closing arguments.[3] Again, given that

---

[3] (See, e.g., Doc. 93 at 131 ("the evidence will show that my client was not predisposed to do a drug deal at the time he met Hai Tran."), 135 ("The last thing they were talking about [at the table in Hooters] was the sauce for the chips, but when they got on the mic, they're talking about drugs, which indicates they were talking about drugs outside off

"counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, Alexander has failed to show that defense counsel's conduct fell below the "objective standard of reasonableness," *Bass*, 310 F.3d at 325 (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052).

Further, even if there was such a constitutionally deficient performance, as the Fifth Circuit stated, "The evidence was overwhelming that Alexander was predisposed and not induced to commit the crime." (Doc. 161 at 12–13.) Given the "totality of the evidence before the judge or jury" and the "overwhelming record support" in favor of the verdict, *Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069, there is simply not a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bass*, 310 F.3d at 325 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

Similarly, even assuming that defense counsel made errors with respect to the motion for acquittal that result in a higher standard of review, there is simply no "reasonable probability" that "the result of the proceedings would have been different," *Bass*, 310 F.3d at 325 (citation omitted), given the "overwhelming" evidence against Alexander and in favor of the verdict (Doc. 161 at 12–13). In short, Petitioner's motion on these issues will be denied.

### 6. Sentencing

#### a. Parties' Arguments

Alexander next complains that Mr. Clemons failed to discuss the § 3553(a) factors. Further, Petitioner argues that Mr. Clemons "did not challenge or present testimony before the

---

the record. But you don't have that conversation."), 136 ("We know Tran had no training whatsoever in the very, very fundamental law in law enforcement of entrapment"), etc.)

court as to the market rate of oxycodone to refute the Government agent's testimony on this issue." (Doc. 166-1 at 19.)

The Government responds, "While counsel may not have specifically referenced § 3553(a) factors, . . . [t]he record clearly demonstrates zealous advocacy by counsel at sentencing," as reflected by the thirteen objections defense counsel filed to the PSR that led to a two-level reduction to Alexander's base offense level. (Doc. 174 at 14–15.)  Additionally, Mr. Clemons filed two separate sentencing memoranda, with supporting documents.  Mr. Clemons also zealously advocated for his client throughout the lengthy sentencing hearing.  Finally, Mr. Clemons did attack the market rate of oxycodone in his sentencing memorandum and his written objections to the PSR.

### b. Analysis

In short, the Court will deny Petitioner's motion on this issue.  The Court does not believe defense counsel's performance fell below the "objective standard of reasonableness." *Bass*, 310 F.3d at 325 (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052).  As the Government asserts, Mr. Clemons filed thirteen objections, and the Probation Office agreed with at least two of these in a Revised PSR. (*See* Doc. 98.)  Mr. Clemons also filed a sentencing memorandum and supplement. (Docs. 124–126.)  These documents included evidence and argument on the market rate of oxycodone. (*See* Doc. 124 at 3; 124-1 at 1.)  While Mr. Clemons did not specifically mention the § 3553 factors, he argued well for his client and contributed to the Court sentencing Petitioner to a bottom-of-the-guideline sentence, in part based on the 3553(a) factors. (*See* Doc. 148 at 155.)  Again, as *Strickland* stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel

was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689–90, 104 S. Ct. at 2065–66 (citations and quotations omitted). The same reasoning applies here, and, for all these reasons, Alexander's motion is denied.

### 7. Appeal

#### a. Parties' Arguments

Petitioner next maintains that he was denied effective assistance of counsel during his appeal. Alexander complains of his appellate counsel Julie Tizzard's failure to raise a non-frivolous issue on appeal: trial counsel's ineffective assistance of counsel in failing to object to the 2001 conviction. Alexander also objects to the failure to file a reply brief and failure to "adequately prepare for oral argument." (Doc. 166-1 at 19.) Petitioner asserts that his appellate counsel refused to file a reply brief without additional compensation and that, eventually, another counsel had to be obtained to file a reply brief. With respect to oral argument, Alexander maintains that she was "unaware of the applicable law and was not familiar enough with the case to adequately answer the appellate panel's questions." (Doc. 166-1 at 20.) "In fact, some of her responses to the panel's questions were incorrect." (Doc. 166-1 at 20.)

The Government responds first by stating that claims of ineffective assistance of counsel cannot be asserted on direct appeal. Second, "[e]ffective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal (not even those

requested by defendant). . . . It is unclear how Alexander received ineffective assistance of counsel in this regard since his other appellate attorney filed a reply brief." (Doc. 174 at 16.) Lastly, with respect to the oral argument, the Government states, "Clearly, Alexander fails to accept that any alleged failure of counsel to provide sufficient argumentation may be a reflection of the weakness of the arguments, not counsel's competency in appellate representation. Neither deficient performance nor prejudice are shown, and habeas relief is not warranted on this issue." (Doc. 174 at 16.)

### b. Applicable Law

"Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 834–35, 83 L. Ed. 2d 821 (1985)). "Counsel's performance on appeal is judged under the two-prong *Strickland* test." *Green*, 160 F.3d at 1043 (citing *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998)). "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green*, 160 F.3d at 1043 (citing *Evitts*, 105 S. Ct. at 835; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996)). Rather, it means, as it does at trial, counsel performing in a reasonably effective manner. *Green*, 160 F.3d at 1043 (citing *Evitts*, *West*, *supra*).

"In order to demonstrate prejudice, a petitioner must show not only that had counsel acted in a different manner a new trial would have been granted, but also that, as a result of counsel's incompetence, the trial was rendered fundamentally unfair or unreliable." *Green*, 160 F.3d at 1043 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 842, 122 L. Ed. 2d 180 (1993)). " '[T]he presence or absence of prejudice, both with respect to claims of ineffective assistance of counsel at the trial and appellate levels, hinges upon the fairness of the trial and the reliability of the

judgment of conviction resulting therefrom.' " *Green*, 160 F.3d at 1043 (quoting *Goodwin*, 132 F.3d at 174). "In short, a petitioner cannot demonstrate prejudice by showing that, but for counsel's deficient performance, he would have been entitled to a new trial under state [or federal] law." *See Green*, 160 F.3d at 1043 (citing *Goodwin*, 132 F.3d at 174). "Rather, a petitioner must also demonstrate that counsel's deficient performance rendered the result of his trial unreliable or the proceeding fundamentally unfair." *Green*, 160 F.3d at 1043 (citing *Goodwin*, 132 F.3d at 172–75). "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1043 (citations omitted).

Thus, in *Green,* the Fifth Circuit found that the petitioner failed to demonstrate prejudice. *Green*, 160 F.3d at 1043. The appellate court explained, "Because Green has alleged no specific facts to show that he was in any way prejudiced by his counsel's performance on direct appeal, his complaint fails the second prong of *Strickland*." *Green*, 160 F.3d at 1043.

### c. Analysis

As in *Green*, the Court finds that Alexander has failed to establish the requisite prejudice. As explained above, the failure to object to the introduction of the 2001 conviction was not prejudicial by *Strickland* standards given the "overwhelming" evidence of guilt against Alexander. *See, supra.* In any event, "[t]he general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been before the district court since no opportunity existed to develop the record on the merits of the allegation." *United States v. Brewster*, 137 F.3d 853, 859 (5th Cir. 1998) (quoting *United States v. Thomas*, 12 F.3d 1350, 1368 (5th Cir. 1994)).

Further, Petitioner has failed to demonstrate a reasonable likelihood that the proceeding was "fundamentally unfair" from merely having to have a second counsel prepare a reply brief.

Petitioner provides no details explaining how the reply brief that was actually filed was defective or prejudicial.

Finally, Alexander complains generally about appellate counsel's performance in briefing and during oral argument (*see* Pet'r's Decl. ¶¶ 30–35, Doc. 166-2 at 23; Doc. 166-1 at 19–20.), but he fails to describe any "specific facts to show that he was in any way prejudiced by his [appellate] counsel's performance on direct appeal[.]" *Green*, 160 F.3d at 1043. This is particularly true given, again, the "overwhelming" and "ample" evidence of guilt noted by this Court and the Fifth Circuit. (Doc. 118 at 16; Doc. 161 at 12–13); *see Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069. As a result, the Court will deny Alexander's motion on this issue.

### C. State Court *Alford* Plea

#### 1. Parties' Arguments

Petitioner also argues that his attorney Mr. Daniels improperly advised him to accept a plea offer in state court and that both Mr. Daniels and Mr. Clemons advised him that this plea would not affect his federal court sentencing. Alexander attested that he was "very hesitate in accepting a plea offer in the state case because 1) I had not committed the crime and the state had previously continued the case without date," and 2) after Alexander entered this plea, his criminal history category raised from II to III, which resulted in an additional 13-16 months on his guideline range. (Doc. 166-1 at 16.) After sentencing, Alexander successfully withdrew from the state court *Alford* plea because of his ineffective assistance of counsel.

The Government offers two related arguments in response. First, Alexander can only get relief on a § 2255 motion if the claim rises to "constitutional or jurisdictional significance." (Doc. 174 at 17 (citation omitted).) Absent those, Petitioner can only obtain relief when there has been a "complete miscarriage of justice." (Doc. 174 at 17–18 (citations omitted).) That did not happen

here.  Second, Petitioner complains only of an incorrect calculation of his guideline range, and that is not cognizable under § 2255. "Thus, Alexander's complaint not only fails to state a constitutional or jurisdictional claim of error, it is not supported by any factual or legal arguments that would suggest that the sentence resulted in a miscarriage of justice.  Accordingly, Alexander's claim cannot be addressed by this Court." (Doc. 174 at 18.)

Petitioner responds first that his attorney's erroneous advice entitles him to "review any federal sentence that was enhanced due to his state court conviction." (Doc. 175 at 5.)  In his supplemental memorandum, Alexander notes that his state court case has now been dismissed with prejudice, so he is entitled to review under *Custis v. Untied States*, 114 S. Ct. 1732 (1994) and other appellate decisions.

## 2. Applicable Law

"Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *United States v. Faubion*, 19 F.3d 226, 233 (5th Cir. 1994)).  "Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 462 (citing *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *Faubion*, 19 F.3d at 233); *see also United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255.").  "However, a defendant's claim of ineffective assistance of counsel does give rise to a constitutional issue. In addition, absent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient to establish the cause and prejudice necessary to overcome a procedural default." *Walker*, 68 F.3d at 934.

Additionally, the Supreme Court has noted in dicta that, if a petitioner "is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences." *Custis v. United States*, 511 U.S. 485, 497, 114 S. Ct. 1732, 1739, 128 L. Ed. 2d 517 (1994). The Fifth Circuit applied this principle in *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994) (per curiam). There, the petitioner was sentenced in federal court as an armed career criminal based on two state drug convictions, but, a year later, one of his state court convictions was overturned "on the ground that his guilty plea was involuntary because the state withheld exculpatory evidence." *Nichols*, 30 F.3d at 36. Petitioner argued in a § 2255 motion that the federal sentence should be set aside "on the ground that he could no longer be considered a career offender since his state conviction had been vacated." *Nichols*, 30 F.3d at 36. The district court denied the motion, but the Fifth Circuit relied on the Government's concession and *Custis* and vacated the sentence. *Nichols*, 30 F.3d at 36.

### 3. Analysis

Having carefully considered the matter, the Court will defer the Petitioner's motion on this issue. Preliminarily, the Court finds that advising Alexander to enter the *Alford* plea in state court and assuring him that it would not affect his federal sentence fell below the requisite standard of objective reasonableness, as this resulted in a higher criminal history category and guideline range for Alexander. (*See* Pet'r Ex. 5, Doc. 166-2 at 25; Doc. 128.)

Prejudice, however, is a much closer call; on the one hand, as shown in the Relevant Factual Background section above, Alexander wrote a letter to the Court which expressly stated that his attorney had given him bad advice with respect to entering the *Alford* plea but that he wanted to proceed with the sentencing in federal court because "there [was] no way [he] [could] stay here another four months due to the living conditions." (Doc. 134-1.) Further, at the start of the

Petitioner's sentencing hearing, the Court specifically asked him if he wanted to delay the sentencing in light of his withdrawing the *Alford* plea in state court, and he specifically stated on the record that he did not want to delay the hearing. (Sentencing Tr. 3–4, Doc. 148.)  Again, the Court had the following colloquy:

> Court: So despite the fact you've hired an attorney to withdraw the *Alford* plea, and the *Alford* plea may have an impact on your sentencing, you, nonetheless, do not want to continue this until the Court has ruled on that?
>
> Alexander: Yes, Sir. I – I tried to get it done before the 21st, today, and they didn't have a date open and. . .
>
> Mr. Clemons: But you do want to proceed today?
>
> Alexander: I do want to proceed today, yeah.
>
> The Court: Okay. Well that's the main thing I just wanted to get cleared up on the record.

(Sentencing Tr. 4, Doc. 148.)  Additionally, Alexander also stated on the record that he had reviewed the Revised PSR and Addenda (one of which had the higher criminal history category from the *Alford* plea),  that he understood them, that he discussed them with his attorney, that Mr. Clemons answered any questions he had, and that he was "satisfied with the representation by Mr. Clemons[.]" (Sentencing Tr., Doc. 148 at 5–6.)   All of this leads the Court to question whether, under *Strickland*, there is a "probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, given Alexander's insistence that he be sentenced quickly to get into the federal Bureau of Prisons as fast as he could.

Nevertheless, the Fifth Circuit's decision in *Nichols* appears clear: if the state court vacated Alexander's *Alford* plea for ineffective assistance of counsel, he would be entitled to a resentencing. *See Nichols*, 30 F.3d at 36.  Thus, the Court must apply that decision.

However, there is insufficient evidence in the record to establish that the *Alford* plea was withdrawn on a constitutional ground. Alexander merely states in his declaration that, "after a hotly contested hearing[,] [he] was able to get [his] state court nolo plea withdrawn." (Pet'r's Decl. ¶ 29, Doc. 166-2 at 22.) Alexander represents in briefing that his state court *Alford* plea was withdrawn because of ineffective assistance of counsel (*see* Doc. 175 at 5), but this representation is not evidence. Without more, the Court cannot determine if Petitioner withdrew his state court plea as a result of ineffective assistance of counsel or some other constitutional ground. *See Nichols*, 30 F.3d at 36 (granting § 2255 motion when the state court conviction had been vacated "because the state withheld exculpatory evidence").

As a result, the Court will give Alexander an opportunity to supplement the record with evidence (such as the state court minutes or a transcript of the state proceeding) to establish that his state court nolo plea was withdrawn for ineffective assistance of counsel. If Petitioner does so (and his briefing strongly indicates he can), the Court will vacate the sentence and resentence him. If Petitioner fails to do so, or if the evidence is inadequate, the Court will deny his motion on this issue. Alexander shall have thirty (30) days to comply with this order.

III.    **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion under 28 U.S.C § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Doc. 166) filed by Petitioner Kendrick D. Alexander is **DENIED IN PART** and **DEFERRED IN PART.**

**IT IS FURTHER ORDERED** that the motion is **DEFERRED** with respect to the issue of Alexander's state court *Alford* plea.

**IT IS FURTHER ORDERED** that Petitioner supplement the record with evidence establishing that the state court *Alford* plea was withdrawn on a constitutional basis such as ineffective assistance of counsel. If Alexander does so, the Court will grant his motion in part and vacate the sentence. If Alexander fails to do so or if such evidence is inadequate, the motion will be denied on this additional ground. Petitioner has thirty days to comply with this order.

**IT IS FURTHER ORDERED** that, in all other respects, Alexander's motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>October 17, 2019</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**