UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

                                     CRIMINAL ACTION

VERSUS

                                     NO. 14-126-JWD-EWD

KENDRICK D. ALEXANDER

## RULING AND ORDER

This matter comes before the Court on the *Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* (Doc. 205) filed by Petitioner Kendrick Alexander ("Petitioner" or "Alexander"). The United States of America ("Government") opposes the motion. (Doc. 208.) Petitioner has filed a reply. (Doc. 213.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Petitioner's motion is denied.

I.       **Relevant Background**

Following a trial, Petitioner was found guilty of one count of attempted possession with intent to distribute oxycodone and was initially sentenced to a term of 121 months' imprisonment. (Doc. 137.) Petitioner was partially successful on a motion brought under 28 U.S.C. § 2255 (Docs. 187, 193), so his sentence was reduced to a total term of 108 months' imprisonment (Doc. 202). Petitioner is now housed at the Federal Correctional Institution ("FCI") in Yazoo City, Mississippi, and his projected release date is November 2, 2021. *See* Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited May 12, 2020).

## II.     Parties' Arguments

### A.  Petitioner's Original Motion (Doc. 205)

Petitioner "requests an order either reducing his sentence to time served or modifying its judgment to be served on home confinement." (Doc. 205 at 1.)  Petitioner urges that "[t]his Court should grant relief based on the client's age, potential health risks, his security score, the duration of his sentence remaining to be served and his rehabilitative efforts since being remanded into custody." (*Id.*)  Petitioner asserts that, through prior counsel, he wrote the Warden at FCI Yazoo City Low "requesting relief," but no action has been taken on that request. (*Id.* at 2.)

Next, Petitioner goes through the above considerations in support of his motion. (*Id.* at 3–6.)  First, "the nature and circumstances of the accused's offense warrants immediate consideration for compassionate release." (*Id.* at 3.)  According to Petitioner, a large chunk of his remaining sentence is a "trial penalty" for him having exercised his right to go to trial. (Doc. 205 at 4.)  Further, Petitioner's crime was not violent and was a "single act" unassociated with firearms. (*Id.*)  "The further incarceration of Mr. Alexander is unnecessary to protect the public from further crimes attributed to him," as his PSR shows only prior convictions from over twenty years ago. (*Id.* at 4–5.)   The PSR also shows that Petitioner did well on supervised release.  His presence in a low-level security prison and eligibility for camp confinement "demonstrates his willingness to conform to the structured environment of prison and take steps towards reformation," as does his having taken college level courses, having obtained training certificates, and having enrolled into the RDAP program. (*Id.* at 5.)  "[A]ny sentencing modification to time served or home incarceration etc. would [also] not run afoul of any statutory penalty." (*Id.*)  Lastly:

> Mr. Alexander is a 46 year old African American male with reported high blood pressure. A recent NBC article notes a disproportionate impact that Covid-19 is having among African Americans and correlates that risk with other underlying factors such as obesity, diabetes, high blood pressure and asthma (Exhibit B.). As

stated above, the virus is running rampant at the FCI facility currently housing Mr. Alexander. Forcing his continued confinement there is more punitive than rehabilitative at this point.

(*Id.* at 6.)  For all these reasons, Petitioner requests compassionate release under the First Step Act.

Petitioner attaches two news articles to his motion.  The first reports how, as of April 21, 2020, a total of 71 inmates at FCI Yazoo tested positive for COVID-19. (Def. Ex. A., Doc. 205-2 at 1.)  The other news article (a NBC News article dated April 8, 2020) discusses how, while African Americans are not necessarily more susceptible of getting infected, Dr. Deborah Birx of the White House Coronavirus Task Force said that her group was " 'very concerned' when it became clear that pre-existing conditions, such as diabetes, high blood pressure, obesity and asthma were associated with worse outcomes of the coronavirus."  (Def. Ex. B, Doc. 205-3 at 2.)  The article then states, "Those underlying conditions tend to be more prevalent in communities of color, a finding that's been well documented in recent years." (*Id.*)  Further, the article continues, "Nearly 90 percent of those hospitalized patients in the CDC report had an underlying condition, with hypertension and obesity most commonly reported." (*Id.*)

### B.  Government's Response (Doc. 208)

The Government opposes the motion. After describing in detail the BOP's efforts to prepare for and deal with COVID-19 (including the use of a home confinement program), the Government argues that the compassionate release statute requires exhaustion of remedies and that the Petitioner has failed to do so. (Doc. 208 at 3-8, 12-14.)  More specifically, the Government explains that the Petitioner's letters to the BOP do not ask the warden to file a motion for compassionate relief, "and neither mentions the compassionate release statute or its standards.  To the contrary, both letters explicitly request that the warden exercise the BOP's expanded authority under the AG Memo dated April 3, 2020." (*Id.* at 12.)  The Government asserts, "The priority

home confinement program authorized by the CARES Act and the Attorney General is not the

same thing as a modification of sentence under 18 U.S.C. § 3582(c)(1)(A)(i)." (*Id.*)  The former

"is an exercise of the BOP's authority to allow inmates to serve a portion of their terms of

imprisonment in home confinement." (*Id.* at 12–13.)  Further:

> Placement in home confinement by BOP is a transfer of placement, not a release
> from the BOP's custody. Such placement is discretionary with the BOP, and this
> Court has no authority to designate a prisoner's place of incarceration. Rather, BOP
> is solely responsible for determining an inmate's place of incarceration.

(*Id.* at 13 (citations omitted).)  Thus, according to the Government, because Petitioner has asked

only for discretionary release on home confinement and has not requested that the BOP " 'bring a

motion on the defendant's behalf,' he has not exhausted his administrative remedies." (*Id.* (quoting

18 U.S.C. § 3582(c)(1)(A)).)  On this ground alone, Alexander's motion should be denied.

Additionally, the Government argues that Petitioner has not shown an "extraordinary and

compelling" reason to reduce his sentence.  (Doc. 208 at 14.) To obtain relief, a defendant must

establish one of three things—a serious medical condition, advanced age, or family

circumstances." (*Id.*)  Alexander has failed to do so.  Even if he has high blood pressure (which is

questionable), this does not qualify as a "serious medical condition" under precedent from this

Court. (*Id.* at 14–15.)  Fear of contracting COVID-19 is also not enough, by itself, to satisfy the

statute's requirements.  (*Id.* at 15.) Nevertheless, COVID-19 is relevant to the analysis in that, if

an inmate has a chronic medical condition identified by the CDC as raising his risk of becoming

seriously ill from COIVD-19, then "that condition may satisfy the standard of 'extraordinary and

compelling reasons.' " (*Id.* at 16.)  "[I]n determining whether an inmate is eligible for release, the

Court should consider whether the inmate is more likely to contract COVID-19 if he or she is

released than if he or she remains incarcerated." (*Id.* at 16–17.)  Here, even if Petitioner has high

blood pressure, that condition is not one identified by the CDC as raising a person's risk of

developing a serious illness from COVID-19. (Doc. 208 at 17.) Thus, Petitioner's situation is

unlike other cases where relief has been granted based on vulnerability to COVID-19. (*Id.* at 17.)

Regardless, "there is no reason to believe that Alexander would be better off if released":

> While in BOP custody, Alexander has access to medical care, screening, and
> sanitation supplies, and his contact with others is strictly limited. Given that
> Alexander has not demonstrated who he would live with, where he would work,
> how he would get medical care, and how he would protect himself from infection
> (particularly while working), he has not established that his new living conditions
> would be comparably safe.

(*Id.* at 17.)  Lastly, the factors Alexander focuses on—his age, time remaining on his sentence, his

"security score," and his efforts at rehabilitation—are only relevant if he demonstrates an

"extraordinary and compelling" reason for release. (*Id.* at 18.) Release is governed by U.S.S.G. §

1B1.13, and Petitioner has failed to show eligibility under that provision.  (*Id.*) In a closing

footnote, the Government calls Petitioner's argument that he was penalized for going to trial

"nothing short of outrageous"; "Alexander did not show remorse—he falsely claimed to be the

victim of entrapment—and he compounded his offense by lying under oath. Alexander was

penalized for his own conduct and culpability, not for exercising his constitutional rights." (*Id.* at

18 n.12.)

### C.  Defendant's Reply (Doc. 213)

Petitioner replies that the Government's arguments are misplaced.  First, the Government's

position that Alexander exhaust his remedies under the First Step Act "fails to take into account

the acute situation plaguing those BOP facilities suffering from the Covid-19 pandemic." (Doc.

213 at 2.)  Petitioner asks the Court to "waive the exhaustion requirement" and cites cases from

other districts supporting this contention.  (*Id.*)

Additionally, "the Government's position concerning the policy requirements justifying a

compassionate release petition are equally stringent and places procedural barriers to

accomplishing the purpose of the First Step Act." (*Id.* at 3.)  According to Alexander, courts have

the ability to independently find extraordinary and compelling reasons to reduce a sentence beyond

the policy considerations of the sentencing guidelines, and this Court should do so here. (*Id.*)

Petitioner closes by reiterating his reasons for release. (*Id.* at 3-4.)

### III.    Discussion

#### A.  Exhaustion

##### 1. Applicable Law

The compassionate release statute now provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not
> modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons,
> > > *or upon motion of the defendant after the defendant has fully*
> > > *exhausted all administrative rights to appeal a failure of the*
> > > *Bureau of Prisons to bring a motion on the defendant's behalf*
> > > *or the lapse of 30 days from the receipt of such a request by the*
> > > *warden of the defendant's facility, whichever is earlier,* may
> > > reduce the term of imprisonment (and may impose a term of
> > > probation or supervised release with or without conditions that
> > > does not exceed the unserved portion of the original term of
> > > imprisonment), after considering the factors set forth in section
> > > 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i)      extraordinary and compelling reasons warrant such a
> > > > reduction; . . .
> > >
> > > and that such a reduction is consistent with applicable policy
> > > statements issued by the Sentencing Commission; and

18 U.S.C. § 3582(c)(1)(A)(i) (italics added).  Thus:

> as the statute makes plain, prior to filing motions for release in the district court, a
> prisoner must first exhaust his administrative remedies either by fully exhausting
> administrative appeals of the BOP's decision not to file a motion for compassionate
> release on his behalf, or by filing the motion with the court after a lapse of 30 days

from the date of the warden's receipt of his request for release, "whichever is earlier."

*United States v. Koons*, No. CR 16-214-05, 2020 WL 1940570, at *3 (W.D. La. Apr. 21, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "The administrative-exhaustion provision is set out in mandatory terms—the district court can modify a sentence only after the defendant has exhausted administrative remedies." *Id.* "This mandatory language includes no exceptions, equitable or otherwise." *Id.*

Conversely, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. No. 116-136, 134 Stat 281 (2020). Section § 3624(c)(2) gives the Director of the BOP the authority "to place a prisoner in home confinement" to "ensure that [he] . . .spends a portion of the final months of [his] term [in prison] . . . under conditions that will afford [him] a reasonable opportunity to adjust to and prepare for the reentry of [him] into the community." 18 U.S.C. § 3624(c)(1), (2). Section 3624 is referred to as a "prerelease," not a release from custody. *See id.* § 3624(c)(3).

"[O]nly the Bureau of Prisons has the actual authority to designate the place of incarceration" or confinement. *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993) (citations omitted); *see also* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]"); *Moore v. U.S. Atty. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam) ("A person convicted of a crime against the United States and sentenced to

7

confinement is committed by statute to the custody of the Attorney General at a place to be designated solely by the Attorney General." (citations omitted)).   "The Bureau of Prisons is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences." *Voda*, 994 F.2d at 152. (citation omitted).

### 2. Analysis

Having carefully considered the matter, the Court finds that Petitioner failed to exhaust his administrative remedies.  In his two letters to the Warden, Petitioner requested "Early Release or home confinement." (Doc. 208-1 at 1.)   Petitioner specifically discussed Section 12003(b)(2) of the CARES Act (quoted above) and the discretionary factors the BOP was to consider "to ensure that BOP utilize home confinement to protect the health and safety of BOP staff and the people in their custody." (*Id.*)   Petitioner's counsel urged that Petitioner "should be released under the CARES Act to home confinement." (*Id.* at 2.)

But, as established above, a request for home confinement under § 12003 of the CARES Act (which Defendant made to the Warden) is different than a request under § 3582(c)(1)(A) for the warden "to bring a motion on the defendant's behalf" to modify his sentence.  The former does not satisfy the exhaustion requirement of the latter.

Petitioner seems to concede this.  He asks not that his letters be characterized as a request under § 3582(c)(1)(A) but rather that the Court waive the exhaustion requirement entirely. (Doc. 213 at 2.)

The Court rejects this argument.  This Court, and other courts in this circuit, have recognized that the exhaustion requirement of § 3582(c)(1)(A) is mandatory and that, if a petitioner fails to exhaust his remedies, this Court must deny his motion for lack of jurisdiction. *See Koons*, 2020 WL 1940570, at *3 ("this Court cannot forgive Koons's failure to exhaust, and without

exhaustion, the Court lacks jurisdiction over his motion.") (citing, *inter alia*, *United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic and the heightened risk at the Oakdale facilities, § 3852(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period. Accordingly, the Court does not have authority at this time to grant the relief Reeves requests."); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020) ("The Defendant concedes that he has failed to comply with the exhaustion requirements under the statute; therefore, this motion is not ripe for review."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("As noted, Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: . . . Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point.")); *United States v. Wicker*, No. 18-108, 2020 WL 2066728, at *2 (M.D. La. Apr. 29, 2020) (deGravelles, J.) ("Consequently, because Petitioner has failed to exhaust his administrative remedies, this Court must apply the mandatory exhaustion requirement described above and deny Petitioner's motion for lack of jurisdiction." (citing *Koons*, *Reeves, Clark, Raia, supra*)); *United States v. Clay*, No. CR 2:18-1282-10, 2020 WL 2296737, at *3 (S.D. Tex. May 4, 2020) ("Because Movant has failed to comply with the exhaustion requirements under § 3582, her motion is not ripe for review, and the Court is without jurisdiction to grant it." (citing *Reeves, Clark, supra*)).

For the same reasons, the Court finds that Petitioner has failed to exhaust his administrative remedies, and, on this ground alone, his motion must be denied.

### B.  "Extraordinary and Compelling" Reasons

#### 1. Applicable Law

Under 28 U.S.C. § 994(t), "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." "Accordingly, the relevant policy statement of the Commission is binding on the Court." *Clark*, 2020 WL 1557397, at *3 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

U.S.S.G. § 1B1.13 contains the relevant policy statement. *Clark*, 2020 WL 1557397, at *3. This section provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> > (1)    (A) *Extraordinary and compelling reasons warrant the reduction*; or
> > (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added). "Additionally, in application note 1 to the policy statement, the Commission identifies the 'extraordinary and compelling reasons' that may justify compassionate release." *Clark*, 2020 WL 1557397, at *3.  This note states:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community],

10

extraordinary and compelling reasons exist under any of the circumstances set forth below:

> (A) Medical Condition of the Defendant.—
>> (i) *The defendant is suffering from a terminal illness* (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> (ii) *The defendant is—*
>>> *(I) suffering from a serious physical or medical condition*,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) *experiencing deteriorating physical or mental health* because of the aging process, *that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.*
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* at *3–*4 (emphasis added) (quoting U.S.S.G. § 1B1.13, app. n.1).  "Generally, the defendant has the burden to show circumstances meeting the test for compassionate release." *Id.* (citing *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)).

In *Clark*, this Court held that high blood pressure was not a "serious physical or medical condition." *Id*. at *4.  Chief Judge Dick explained that there was "no allegation or evidence that [this] rather common condition[] [was] not adequately controlled by medications which [petitioner] concedes he takes." *Id.* at *4 n.17.  Further, by petitioner's "own allegations, [his]

medical conditions [were] controlled by medication . . . which the BOP has made available to him." *Id.*

Similarly, in *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108 (D. Conn. Mar. 19, 2020), which *Clark* relied upon, the petitioner argued that he was "at a heighted risk due to 'his compromised medical condition,' . . . referencing his 'high blood pressure, high cholesterol, asthma, and allergies." *Id.* at *3. After concluding that the petitioner had failed to exhaust his administrative remedies (and thus that "the Court cannot consider his motion to modify his sentence"), the Court explained:

> Mr. Gileno has not shown that his medical issues, which remain largely the same as when he was sentenced, "substantially diminish [his] ability . . . to provide self-care" within the correctional facility. *Id.* Courts grant sentence modifications or reductions based on defendants' medical conditions where those conditions are extremely serious, if not life-threatening. *See, e.g.*, *Ebbers*, 2020 WL 91399, at *5 ("The Medical Condition Note . . . highlights 'terminal illness' and 'serious conditions and impairments,' including 'advanced dementia' and other diseases associated with an 'end of life trajectory.' "); *United States v. Beck*, No. 1:13-cr-186-6, 2019 WL 2716505, at *12 (M.D.N.C. June 28, 2019) (granting compassionate release for 47 year-old defendant who had cancer that was not timely treated); *United States v. Gray*, 416 F. Supp. 3d 784, 791 (S.D. Ind. 2019) (granting compassionate release to 64-year old defendant who had been hospitalized for multiple procedures, including one for a liver tumor); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (granting compassionate release where defendant was wheelchair bound, blind, required 24/7 care, and was given a prognosis of 18 months to live); *cf. Rivernider*, 2020 WL 597393, at *5 (finding that the defendant's "heart condition is not nearly as grave as the medical conditions that have been found to justify compassionate release in other cases," noting that the defendant has not demonstrated that his heart condition 'substantially diminishes [his] ability . . . to provide self-care' "). Mr. Gileno has not shown that his medical issues are sufficiently serious to modify his sentence to home confinement.
>
> With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno. The Court takes judicial notice of the fact that public health recommendations are rapidly changing. *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Cases & Latest Updates (last updated Mar. 17, 2020) ("This is an emerging, rapidly evolving situation and CDC

will provide updated information as it becomes available, in addition to updated guidance."), *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/index.html. But at this time the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated.

*Id.* at *4.

Additionally, "the *fear* of contracting a communicable disease" does not "warrant[] a sentence modification." *Clark*, 2020 WL 1557397, at *4 (emphasis in original).  *Clark* quoted at length *United States v. Eberhart*, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020), which stated:

Furthermore, defendant fails to show that concerns about the spread of COVID-19, without other factors to consider in his particular case, present extraordinary and compelling reasons that warrant modification of his sentence and immediate release from custody pursuant to § 3582(c)(1)(A), which requires that a reduction of sentence under this provision be "consistent with applicable policy statements issued by the Sentencing Commission." General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.

*Clark*, 2020 WL 1557397, at *5 (quoting *Eberhart*, 2020 WL 1450745, at *2).

### 2. Analysis

Having carefully considered the matter, the Court finds that Petitioner has failed to satisfy his burden for obtaining compassionate release.  More specifically, Alexander has failed to present adequate evidence of any of the criteria in U.S.S.G. § 1B1.13 demonstrating "extraordinary and compelling reasons."  Petitioner is not terminally ill with a "serious and advanced illness with an end of life trajectory" like cancer or advanced dementia. *See id.* § 1B1.13, app. n.1(A)(i).

Next, as to whether Alexander has a "serious physical or medical condition" under U.S.S.G. § 1B1.13, app. n.1(A)(ii)(I), it is questionable that the Petitioner even has high blood pressure.  In the Second Revised PSR (dated November 13, 2019), Petitioner's physical condition was described in part as follows: "He described his overall physical health as good. Alexander is not under the care of a physician *and is not currently taking any type of medication*. However, he

13

reported that he suffers from pain in his knees, and he takes over-the-counter pain medications."
(Doc. 198 at 14 (emphasis added).)  Further, Petitioner presents no evidence at this time that he in
fact has high blood pressure.

Nevertheless, even assuming that he does, that condition does not constitute a "serious
physical or medical condition." *See id.* § 1B1.13, app. n.1(A)(ii)(I); *Clark*, 2020 WL 1557397, at
*4 n.17; *Gileno* 2020 WL 1307108, at *3.  Thus, Alexander has no "extraordinary or compelling
reason" on that ground.

Other reasons also fail.  Petitioner is not "suffering from a serious functional or cognitive
impairment." U.S.S.G. § 1B1.13, app. n.1(A)(ii).  Alexander has also not shown that his high blood
pressure is causing "deteriorating physical or mental health . . . that substantially diminishes [his]
ability. . . to provide self-care within the environment of a correctional facility." *Id.*  Petitioner
does not satisfy the age or family circumstance requirement in § 1B1.13, app. n.1(B) & (C), and
he has not shown that the Director of the BOP determined that "there exists in the defendant's case
an extraordinary and compelling reason other than, or in combination with, the [other] reasons
described in" the Sentencing Guidelines, *id.* app. n.l(D).

Moreover, Petitioner has failed to demonstrate that the BOP's measures for dealing with
COVID-19 are inadequate.  As the Government argued:

> While in BOP custody, Alexander has access to medical care, screening, and
> sanitation supplies, and his contact with others is strictly limited. Given that
> Alexander has not demonstrated who he would live with, where he would work,
> how he would get medical care, and how he would protect himself from infection
> (particularly while working), he has not established that his new living conditions
> would be comparably safe.

(Doc. 208 at 17.)  Or, as *Clark* found, "there is no evidence before the Court that the BOP's plan
to address the pandemic will not adequately protect inmates" like Alexander. *Clark*, 2020 WL
1557397, at *5.

14

Petitioner maintains that this Court has the authority to decide if there are extraordinary and compelling reasons beyond the specific criteria laid out in § 1B1.13.  There is a split of authority on this issue.  *See United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *1–*2 (S.D. Ga. Dec. 10, 2019) (collecting cases on both sides of this issue but ultimately holding that "this Court will follow the policy statement in U.S.S.G. § 1B1.13 and deny Willingham's motion because she does not meet the specific examples of extraordinary and compelling reasons and the Director of the BOP has not determined that circumstances outside of these examples exist to afford her relief.").

Ultimately, this Court need not resolve this split.  Even if the Court were empowered to go beyond the specific criteria in § 1B1.13, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Here, even if the Petitioner had demonstrated an extraordinary and compelling reason, the Court would exercise its discretion and deny the requested relief.  The Court has considered the factors highlighted by the Petitioner—his age, potential health risks, security score, duration of his remaining sentence, and rehabilitative efforts—and finds that they are neutral.  While Alexander is a relatively young man who represents as having a low security score and having engaged in considerable rehabilitative efforts, as explained above, his potential health risks are not as severe as he asserts under *Clark* and *Gileno*, and his age puts him outside the high risk groups over 70 who are particularly susceptible to COVID-19.

Further, while the Court must consider the Attorney General factors, *Chambliss* makes clear that it must also consider the § 3553(a) factors (to the extent applicable), and these weigh against compassionate release.  The nature and circumstances of the offense were serious; while

15

non-violent, Petitioner was attempting to purchase a large quantity of oxycodone units (5,000) with the intent to distribute them. Additionally, the history and characteristics of the defendant weigh heavily in the Court's view against release. As the Government argues, Petitioner is not serving his remaining term in jail as a "trial penalty"; Petitioner lost his acceptance of responsibility points and received an obstruction enhancement because he himself chose to lie under oath and claimed, to the very end (even in his § 2255 motion), that he was not responsible for his actions but was entrapped. (*See* Doc. 187 at 27–28.) The Court also finds that the sentence imposed should reflect the seriousness of the offense and afford adequate deterrence; this is the reason why the Court gave Petitioner the sentence it did (a low end of the guideline sentence), and the Court believes that giving the Petitioner compassionate relief would undermine those goals.

## IV.    Conclusion

Petitioner failed to exhaust his administrative remedies, so the Court is without jurisdiction to consider his motion. Additionally, he failed to present sufficient evidence to establish that there is an extraordinary and compelling reason for reducing his sentence, as he failed to satisfy any of the criteria in § 1B1.13. Finally, even if Petitioner had shown an extraordinary and compelling reason, the Court would still exercise its discretion to decline the motion. Accordingly,

**IT IS ORDERED** that the *Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* (Doc. 205) filed by Petitioner Kendrick Alexander is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 13, 2020</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**